UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIMSA,
a Texas corporation,

        CASE NO. 05-CV-72159-DT
Plaintiff,        HON. LAWRENCE P. ZATKOFF

vs.

GEHRING L.P., a Michigan
Limited Partnership, and
GEHRING GMBH & CO., a
German company,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on February 24, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant Gehring GmbH & Co.'s ("GmbH") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Docket #6). Plaintiff has filed a response to the Motion to Dismiss, and GmbH has filed a reply. The Court finds that the facts and legal arguments pertinent to GmbH's Motion are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that GmbH's Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, GmbH's Motion to Dismiss for lack of personal jurisdiction is DENIED WITHOUT PREJUDICE.

## II. BACKGROUND

This lawsuit stems from a dispute over commissions to be paid under an agreement between Plaintiff and defendant Gehring L.P. (the "Partnership").  Plaintiff is a Texas corporation that functions as a sales and service representative.  The Partnership is a Michigan limited partnership. A number of German citizens, including Dorothee Stein-Gehring, are the limited partners of the Partnership.  Gehring, Inc., an Ohio corporation, is the sole general partner of the Partnership.[1] Gehring, Inc. is owned by Ms. Stein-Gehring and her sister, Sabine Nann.  GmbH is a German company whose stock is owned by a number of German citizens, including Ms. Stein-Gehring.  Ms. Stein-Gehring is also the CEO and Chairperson of the Executive Board of GmbH.  GmbH does not own any part of the Partnership or Gehring Inc.

Effective November 1, 2000, Plaintiff and the Partnership entered into an agreement titled "SIMSA-Gehring Sales and Service Agreement," which is attached to Plaintiff's Complaint as Exhibit A (hereinafter, the "Agreement"). Under the Agreement, Plaintiff was to act as sales agent for the Partnership by soliciting and developing sales in the Mexican market for the Partnership's products.  GmbH is not a party to the Agreement, nor is it mentioned in the body of the Agreement or any schedule attached thereto.

Plaintiff states that before negotiations between Ricardo Martinez, the President of Plaintiff, and the President of the Partnership (Olaf Tessarzyk) commenced in August 2000, GmbH's sales director, Peter Baraitaru, in January 2000, initiated the discussions that resulted in the Agreement (Martinez Affidavit, ¶2).  Mr. Martinez stated that "[d]iscussions ensued with regard to such representation, during which time there was no distinction between equipment produced by Gehring GmbH in Germany or Gehring LP ("LP") in Farmington Hills, Michigan." (Martinez Affidavit, ¶3).

---

[1] *See* Affidavit of Stein-Gehring, ¶5.  The parties argue, but never resolve, the issue of whether the General Partner of the Partnership is an Ohio corporation called "Gehring, Inc." (as Ms. Stein-Gehring asserts in her affidavit), an Ohio corporation called "Gehring Corp.," or a Delaware corporation called "Gehring, Inc."  In any event, neither Plaintiff and GmbH dispute that the entity which is the General Partner of the Partnership is owned in part by Ms. Stein-Gehring and that Ms.Stein-Gehring and GmbH's attorney are directors of the General Partner. For purposes of this Opinion, the Court shall refer to the General Partner as "Gehring, Inc."

The Agreement provides that the laws of the City of Farmington Hills, Michigan shall govern the construction and enforcement of the Agreement and the products to be sold by Plaintiff were those engineered, traded and manufactured by the Partnership. On October 28, 2000 (the date the Agreement was signed), however, the Partnership's President acknowledged in writing that the products would "include all products from Gehring Worldwide." (Martinez Affidavit, ¶6). Mr. Martinez also stated that "[d]uring SIMSA's relationship with Gehring, there was never any distinction between GmbH and LP; they operated under the umbrella of one company, The Gehring Group, and they would review each customer inquiry and determined which entity would build the product." (Martinez Affidavit, ¶7).

### III. LEGAL STANDARD

**A.    Standard of Review**

GmbH brought this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2). It is well settled that the plaintiff bears the burden of establishing that personal jurisdiction exists in this Court. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141 (1936); *accord Am. Greeting Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); *Weller v. Commwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)).

Once a defendant has filed its properly supported motion for dismissal, plaintiff "may not stand on . . . [its] pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction [over defendant]." *Theunissen*, 935 F.2d at 1458 (citing *Weller*, 504 F.2d at 930). Here, GmbH has filed a properly supported motion for dismissal, GmbH has submitted two affidavits and Plaintiff has submitted an affidavit and a number of supporting documents..

Accordingly, the Court has before it a properly supported Fed. R. Civ. P. 12(b)(2) motion and opposition thereto. At this stage of the proceedings the Court has three options:

3

> [I]t may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.

*Theunissen*, 935 F.2d at 1458 (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  It is within the Court's discretion to decide which method it will employ in deciding the motion.  *Theunissen*, 935 F.2d at 1458 (citations omitted).  However,

> the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal. . . .  Where the court relies solely on the parties affidavits to reach its decision, the plaintiff must make only a prime facie showing that personal jurisdiction exists in order to defeat dismissal.

*Id*. (citations omitted).

In addition, "the pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff."  *Id*. at 1459 (citations omitted).  "[H]owever, the court disposing of a 12(b)(2) motion . . . [cannot] weigh the controverting assertions of the party seeking dismissal."  *Id*. (citations omitted).  Because the Court will decide the instant motion on the pleadings submitted, it is under the parameters set forth above that the Court will analyze the instant motion.

**B.  Personal Jurisdiction**

Under Rule 4(e) of the Federal Rules of Civil Procedure, the Court must look to the Michigan long-arm statute, M.C.L.A. § 600.715, to determine whether personal jurisdiction exists in the case at bar.  M.C.L.A. § 600.715 provides, in pertinent part:

> The existence of any of the following relationships between an individual or his agent and the State shall constitute a sufficient basis of jurisdiction to enable a Court of record of this State to exercise limited personal jurisdiction over the individual and to enable the Court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> > (1)  The transaction of any business within the State.
> >
> > (2)  The doing or causing any act to be done, or consequences to occur, in the state, resulting in an action for tort.

In *Sifers v. Horn*, 385 Mich. 195 (1971), the Michigan Supreme Court stated that the word "any" which is found in M.C.L.A. § 600.715(a) "means just what it says. It includes 'each' and 'every' . . . . It comprehends the 'slightest'" contact. *Id*. at 199 n.2. *See also Lanier v. American Bd. Of Endodontics*, 843 F.2d 901, 905-906 (6th Cir. 1988). "However, constitutional concerns of due process limit the application of this state law." *Theunissen*, 935 F.2d at 1459 (citation omitted). A defect in the Due Process considerations "would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would permit it." *Id.* The relevant criteria for Due Process consideration are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (quoting *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir. 1989), *cert. denied*, 110 S.Ct. 1525 (1990)(citing *Southern Machine Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968)).

### IV.  ANALYSIS

The sole issue before the Court on GmbH's motion is whether this Court has personal jurisdiction over GmbH. Plaintiff's First Amended and/or Supplemental Complaint (hereinafter "Complaint") states, in part:

> 2.      Defendant, Gehring, L.P. ("LP"), upon information and belief, is a Delaware or Michigan Limited Partnership with a principal place of business in Farmington Hills, Oakland County, Michigan, U.S.A., and is a wholly owned subsidiary is owned by common shareholders of Defendant Gehring GmbH & Co. (GmbH) or is an otherwise related entity of GmbH and upon information and belief, GmbH is a corporate entity incorporated or otherwise existing and residing in Ostfildern, Germany.
>
> 3.      Defendant GmbH exerts influence and control and acts as an alter ego in the operation of its businesses as it relates to the Plaintiff and others and both Defendants must be accountable to Plaintiff.

   4. Defendants conduct substantial, continuous and systematic business directly or indirectly in Michigan and/or Texas and throughout North America and elsewhere in the world, have availed themselves of the benefits and protections of the law of the United States, including the laws of Texas and Michigan, and have expressly and/or impliedly contractually chosen the United States as the jurisdiction whose laws apply to dispute resolution. []

* * * * *

   6. Defendants have submitted to the jurisdiction of this Court by virtue of the provisions of the [Agreement] and otherwise.

* * * * *

   8. Sometime at or prior to November, 2000, Plaintiff and Defendants LP and GmbH negotiated in Michigan and/or Texas and entered into a relationship whereby Plaintiff was to act as sales agent for Defendants to solicit and develop sales in the Mexican market for Defendants' products.

* * * * *

   10. Plaintiff and Defendants documented certain terms of their relationship in [the Agreement], which was confirmed to include both Defendants L.P. and GmbH, and their respective products. (See Ex B, October 28, 2000 GmbH letter).

**A.** **Conclusory Allegations of Alter Ego Relationship**

  To date, no party has contested that the Partnership is subject to the personal jurisdiction of this Court. As the Partnership has a production plant and offices in Farmington Hills, Michigan (and may be a Michigan Limited Partnership), this is not surprising. Plaintiff argues that GmbH is subject to the personal jurisdiction of this Court because the Partnership is the alter ego of GmbH. In its Complaint, however, Plaintiff does not describe the alleged alter ego relationship between the Partnership and GmbH in any manner. Rather, Plaintiff's Complaint simply contains one conclusory allegation (Complaint, ¶3) that Plaintiff is the alter ego of GmbH. Conclusory allegations of an alter ego relationship, however, are not sufficient to survive a motion to dismiss. *See, e.g., Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980).

  In addition, Plaintiff has failed to address (to say nothing of refute) the statements of Ms. Stein-Gehring in her Affidavit that GmbH has no direct ownership role in the Partnership. In

addition, as evidenced by Ms. Stein-Gehring's Affidavit, GmbH does not even have an indirect ownership role in the Partnership, as it is not an owner of any of the limited partners or the general partner of the Partnership. Plaintiff wholly ignored the statements of Ms. Stein-Gehring in its response brief. Rather, Plaintiff consistently cited cases which stood for the proposition that the parent of a wholly-owned subsidiary could be subject to personal jurisdiction when such parent is the alter ego of such subsidiary. As GmbH is clearly not the parent of the Partnership, however, such authority is irrelevant here.[2]

For the reasons set forth above, the Court finds that Plaintiff's Complaint fails to sufficiently allege that the Partnership is the alter ego of GmbH such that GmbH could be subject to personal jurisdiction in this Court on the basis of such an alter ego relationship.

**B.      Prima Facie Case of Specific Personal Jurisdiction over GmbH**

The Court now addresses whether there is any basis for subjecting GmbH to the personal jurisdiction of this Court, other than an alter ego theory. "A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the laws of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) (citation omitted).

*1.      Personal Jurisdiction Authorized by Michigan Law*

As the *Sifers* court recognized, the "transaction of any business within" Michigan under M.C.L.A. § 600.715 "means just what it says. It includes 'each' and 'every' . . . . It comprehends the 'slightest'" contact. *Sifers*, 385 Mich. at 199 n.2. In Paragraphs 2, 4 and 8 of its Complaint, the Plaintiff makes allegations regarding GmbH's connections to Michigan that may be summarized as follows: GmbH is a related entity of the Partnership, GmbH conducts substantial, continuous and systematic business directly or indirectly in Michigan and/or Texas, at some point

---

[2] Plaintiff discusses the "common ownership" between the Partnership and GmbH at various times in its response brief. The Court notes that some courts have held that one sister entity may be deemed the alter ego of another sister entity, however, Plaintiff also has failed to set forth any allegations that would support such a finding in this case.

GmbH negotiated with Plaintiff in Michigan and/or Texas and the end result of such negotiations was the Agreement.

The filings of the parties with respect to the Motion to Dismiss, and in support of the affidavits filed, reveal (1) GmbH has not disputed the statement of Plaintiff's President, Mr. Martinez, that GmbH's sales director initiated the discussions which resulted in the Agreement, (2) in its reply brief, GmbH acknowledges that at least one its employees, Mr. Baraitaru, visited the Partnership "in 2002 to discuss GmbH's relationship with its independently incorporated distributor," (3) Mr. Bariataru was at a "2002 Sales Meeting" of the Partnership in Farmington Hills, (4) Mr. Martinez, the Plaintiff's President, was present at that meeting, (5) topics discussed at such meeting included: "Simsa/Mexico Opportunity Review" and "Gehring GmbH Review," (6) at the same meeting, it was noted that "GmbH must review all proposals before they are submitted to the customer," and (7) emails were sent from an employee of the Partnership to Mr. Martinez dated June 1, 2004, and November 18, 2004, and such emails noted that Peter [Baraitaru] would be in Detroit for a "sales meeting" and "meeting," respectively, at which time Mr. Martinez could meet with Mr. Baraitaru.

On the basis of the foregoing items, the Court finds that Plaintiff has set forth sufficient evidence (when taken in a light most favorable to Plaintiff, as the Court at this time) that GmbH's contacts with Michigan are enough to authorize the Court's exercise of personal jurisdiction over GmbH pursuant to M.C.L.A. §600.715.

2. *Due Process Not Offended*

As the *Neogen Corp.* court recognized, the mere authorization of the laws of Michigan to exercise personal jurisdiction over a defendant is not enough. Rather,

> [i]n order to survive [GmbH]'s motion to dismiss, [Plaintiff is] required to present a prima facie case that the . . . court's exercise of personal jurisdiction would not offend due process. [Plaintiff] therefore must establish with reasonable particularity sufficient minimum contacts with Michigan so that the exercise of jurisdiction over [GmbH] would not offend "traditional notions of fair play and substantial justice.

8

*Neogen Corp.*, 282 F.3d at 889. The *Mohasco* requirements, discussed *supra*, ensure that due process is not violated.

In this case, the Court finds that the Plaintiff has presented a prima facie case that the Court's exercise of personal jurisdiction would not offend due process. All of the items set forth in Section IV.B.1. above, as well as the other filings to date, have been construed in the light most favorable to Plaintiff, as they must be at this time. *See Serras v. First Tenn. Bank Ntl. Assoc.*, 875 F.2d 1212, 1214 (6th Cir. 1989). Under that standard, the Court finds that Plaintiff has presented a prima facie case that the exercise of personal jurisdiction over GmbH by the Court would not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310,316 (1945).

In addition, the Court finds that the *Mohasco* requirements have been satisfied as (a) GmbH has purposefully availed itself of the benefits of Michigan law because, among other things, it has caused at least one of its representatives to travel to Detroit, Michigan, for at least three meetings with the Partnership, (b) this cause of action arises, at least in part, from GmbH's alleged activities in Michigan (*e.g.*, the discussions that led to the Agreement were initiated by an agent of GmbH, the attendance of Mr. Baraitaru at the 2002 meeting in Farmington Hills where the "Simsa/Mexico Opportunity Review" was discussed and the emails from an employee of the Partnership to Plaintiff's President regarding the ability to meet with Mr. Baraitaru in Detroit in 2004), and (c) the acts of GmbH or the consequences caused by GmbH have a substantial enough connection with Michigan to make the exercise of jurisdiction over GmbH reasonable (*e.g.*, numerous emails between employees of the Partnership and GmbH, and the repeated trips of at least one GmbH employee (Mr. Baraitaru) to Detroit).

   *3.   Conclusion*

For the reasons stated above, the Court finds that a prima facie case has been established that the exercise of personal jurisdiction over GmbH is (1) authorized by the laws of the State of Michigan, and (2) in accordance with the Due Process Clause of the Fourteenth

Amendment. *Neogen Corp.,* 282 F.3d at 888. The Court notes, of course, that GmbH can continue to contest personal jurisdiction at any time. *See, e.g., Neogen Corp.*, 282 F.3d at 893; *Serras*, 875 F.2d at 1214.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, GmbH's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: February 24, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 24, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290